IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

SHANNON L. GATEWOOD,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C15-0110

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    *INTRODUCTION* ........................................... 2

II.   *PRINCIPLES OF REVIEW* .................................. 2

III.  *FACTUAL AND PROCEDURAL BACKGROUND* ............. 3

IV.  *CONCLUSIONS OF LAW* ................................... 4
    A.    *ALJ's Disability Determination* ......................... 5
    B.    *Objections Raised By Claimant* ......................... 7
        1.    *Medical Source Opinions* ......................... 7
            a.    *Pertinent Medical Opinions* .................. 7
            b.    *Applicable Law* ......................... 10
            c.    *Discussion* ........................... 13
        2.    *Hypothetical Question* ......................... 16
    C.    *Reversal or Remand* ................................ 17

V.    *CONCLUSION* ........................................ 18

VI.  *ORDER* .............................................. 18

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Shannon L. Gatewood on October 12, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits.[1] Gatewood asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Gatewood requests the Court to remand this matter for further proceedings.

# II. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive

---

[1] On January 6, 2016, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

. . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'"

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTUAL AND PROCEDURAL BACKGROUND

Gatewood was born in 1973. She is a high school graduate. In the past she worked as a laborer in retail stores.

Gatewood filed her application for disability insurance benefits on April 25, 2012, alleging disability due to neck and shoulder injuries. She alleged she became disabled on

September 29, 2011.  Her application was denied upon initial review, and on reconsideration.  On February 19, 2014, Gatewood appeared via video conference with her attorney before Administrative Law Judge ("ALJ") Eric E. Basse for an administrative hearing.[2]  In a decision dated April 7, 2014, the ALJ denied Gatewood's claim.  The ALJ determined Gatewood was not disabled and not entitled to disability insurance benefits because she was functionally capable of performing work that exists in significant numbers in the national economy.  Gatewood appealed the ALJ's decision.  On August 11, 2015, the Appeals Council denied Gatewood's request for review.  Consequently, the ALJ's April 7, 2014 decision was adopted as the Commissioner's final decision.

On October 12, 2015, Gatewood filed the instant action for judicial review.  A briefing schedule was entered on December 22, 2015.  On March 21, 2016, Gatewood filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing other work that exists in significant numbers in the national economy.  On April 20, 2016, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision.

Additionally, on March 8, 2016, both parties together filed a joint statement of facts addressing Gatewood's background, the case's procedural history, testimony from the administrative hearing, and Gatewood's medical history.  *See* docket number 10.  The parties' joint statement of facts is hereby incorporated by reference.  Further discussion of pertinent facts will be addressed, as necessary, in the Court's consideration of the legal issues presented.

---

[2] At the administrative hearing, Gatewood was represented by attorney Laura Seelau.  On appeal, Gatewood is represented by attorneys Corbett A. Luedeman and Thomas A. Krause.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Gatewood was not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

5

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined Gatewood had not engaged in substantial gainful activity since September 29, 2011. At the second step, the ALJ concluded from the medical evidence Gatewood has the following severe impairments: degenerative disc disease, fibromyalgia versus myofascial pain, obesity, and degenerative joint disease of the left shoulder. At the third step, the ALJ found Gatewood did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Gatewood's RFC as follows:

> [Gatewood] has the residual functional capacity to perform light work . . . except she can occasionally climb ramps and stairs, balance, stoop, and squat and can perform no overhead lifting, crawling, . . . must avoid concentrated exposure to heat and vibration, and cannot perform work involving unprotected heights or hazardous machinery.

(Administrative Record at 23.) Also at the fourth step, the ALJ determined Gatewood is unable to perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Gatewood could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Gatewood was not disabled.

## B. Objections Raised By Claimant

Gatewood argues the ALJ erred in two respects. First, Gatewood argues the ALJ's RFC is flawed because the ALJ failed to properly evaluate the opinions of multiple medical sources. Second, Gatewood argues the hypothetical questions provided to the vocational expert at the administrative hearing are flawed because they are not supported by substantial evidence and do not properly set forth her credible functional limitations.

### 1. Medical Source Opinions

Gatewood argues the ALJ failed to properly consider and/or address the opinions of various treating and examining doctors, and incorporate their limitations into his RFC determination. Specifically, Gatewood argues the ALJ failed to properly address the opinions of Dr. Mark Taylor, M.D., a treating physician, who placed work limitations on Gatewood in December 2011. Next, Gatewood asserts the ALJ failed to properly address the opinions of Dr. Karen Harmon, M.D., a treating doctor, who among other things, addressed Gatewood's functional limitations in an insurance questionnaire. Gatewood further argues the ALJ failed to properly address the opinions of Dr. Richard F. Neiman, M.D., an examining source, who performed a consultative examination for Gatewood. Finally, Gatewood argues the ALJ failed to properly address the opinions of Stephanie Robinson, ARNP, a treating source who filled out a functional ability questionnaire for Gatewood. Gatewood concludes this matter should be remanded for further consideration of these opinions, and how the various opinions relate to her RFC.

### a. Pertinent Medical Opinions

On December 12, 2011, Gatewood met with Dr. Mark C. Taylor, M.D., for a follow-up appointment regarding neck and shoulder pain. Dr. Taylor noted Gatewood had been treated with trigger point injections, but continued to suffer from neck and shoulder pain. An EMG of her shoulder was normal, but Dr. Taylor indicated that an EMG does not identify radiculitis, which was consistent with her symptoms. Upon examination, Dr. Taylor found:

> limitations in her neck flexion. Even with encouragement, I could only get her to flex about 40 to 50% of normal. Extension was reasonable. Turning to the left and to the right revealed that she had pain that was more pronounced with turning to the right than to the left.

(Administrative Record at 363.) Dr. Taylor diagnosed Gatewood with persistent neck and upper trapezius/shoulder myofascial pain and left upper extremity parethesias with negative EMG. Dr. Taylor concluded:

> It would be helpful if we could start to wean her back into a work setting. I put her on a 5- to 10-pound lift limit, and she needs to avoid sustained neck postures such as neck flexion. I would initially recommend two hours per shift. It sounds as if they will not be able to accommodate these restrictions, but this would be a reasonable starting point until additional information becomes available from physical therapy as far as what she can and cannot handle from a physical demand standpoint.

(Administrative Record at 364.)

In March 2012, Dr. Karen Harmon, M.D., filled out an insurance questionnaire regarding Gatewood's lifting and reaching capabilities. Dr. Harmon opined Gatewood could occasionally reach above shoulder level, and occasionally reach in front of her and to the side at desk level. Dr. Harmon also determined Gatewood be limited in eye/hand movements with restive neck motion to 3-4 hours during a typical eight-hour workday.

8

Dr. Harmon further opined Gatewood should only lift less than 10 pounds above shoulder level, and never lift more than 50 pounds. She could occasionally lift 21 to 50 pounds from waist to floor, and frequently lift 11 to 20 pounds chest level to floor. Lastly, Dr. Harmon opined Gatewood could occasionally push/pull 21-100 pounds, and frequently push/pull 11-20 pounds.

On June 22, 2012, Gatewood met with Dr. Richard F. Neiman, M.D., for a consultative examination. Upon examination and review of x-rays and an MRI, Dr. Neiman determined Gatewood suffered from neck discomfort and had protruding discs at C5-6 and C6-7. Dr. Neiman recommended cervical epidural injections and questioned why such treatment had not be tried sooner as "she has obvious disk disease."[3] In determining her functional limitations, Dr. Neiman opined:

> [Gatewood would have] difficulty returning to previous job due to requirements of heavy lifting and pushing. She should avoid excessive flexion, extension, and lateral flexion of the cervical spine. . . . I should note that she had a functional assessment. It looks like they are suggesting in the range of free lifting of 10 pounds. Similar restriction by Dr. Taylor by 10 pounds of lifting restriction and avoid neck flexion, which is quite reasonable. . . . Level of impairment about 15% and functional restrictions in my opinion are related to [her past] injuries.

(Administrative Record at 586-87.)

On July 11, 2013, Stephanie Robinson, ARNP, a treating source, filled out a functional ability questionnaire for Gatewood. Robinson opined Gatewood could intermittently sit, stand, and walk during a typical eight-hour workday. Robinson indicated Gatewood could occasionally bend and stoop, reach above shoulder level, and reach in front of her and to her side at desk level. Robinson opined Gatewood should not lift any weight above 20 pounds, and should not lift any weight above shoulder level. She

---

[3] Administrative Record at 585.

could occasionally lift 10 pounds or less shoulder level to the floor, and occasionally lift up to 20 pounds chest level to the floor. Finally, Robinson asserted Gatewood could push/pull up to 20 pounds occasionally. Robinson suggested Gatewood stay off work for one year, and if she returned to work, her duties would need to be "very modified" with minimum work hours.

### b. Applicable Law

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Furthermore, an ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. §§ 404.1527(c); 416.927(c). If the medical opinion comes from a treating medical source, then the ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great

weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). Moreover, the decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR 96-2P, 1996 WL 374188 (July 2, 1996).

If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2008). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent

11

with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). In considering a non-treating physician's RFC assessment, an ALJ is not required to give controlling weight to the physician's assessment if it is inconsistent with other substantial evidence in the record. *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004). "If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'" *Travis*, 477 F.3d at 1041 (quotation omitted). If according the opinion less weight, the ALJ "must explain why the opinion was not adopted." SSR 96-8P, 1996 WL 374184 (July 2, 1996).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Finally, in considering the opinions of Stephanie Robinson, ARNP, the Court must apply the principles set forth in the Social Security Regulations for a treating source that is not classified as an "acceptable medical source." Even though Robinson is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to

clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a counselor, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

### c.    *Discussion*

In her brief, the Commissioner "acknowledges that the ALJ erred by not explicitly discussing all of the medical opinions of record. However, the ALJ's errors were harmless[.]"[4] The Commissioner indicates that the ALJ noted some of Gatewood's visits to Drs. Taylor, Harmon, and Neiman in his decision, but admits that the ALJ did not

---

[4] Commissioner's Brief (docket number 12) at 6.

weigh any of these opinions. The Commisioner further points out the ALJ did weigh Robinson's opinions, and granted weight to the lifting and push/pull limitations provided in the questionnaire, but gave no weight to her opinions regarding Gatewood's limited ability to sit, stand, or walk. The Court notes ALJ also did not address Robinson's opinion that Gatewood should lift no weight above shoulder level or her suggestion that Gatewood not return to work for one year without extreme work modifications, including working a minimum number of hours.[5]

Having reviewed the entire record, the Court believes failing to properly address these various opinions is significant, in particular with regard to the ALJ's RFC assessment for Gatewood. *Guilliams*, 393 F.3d at 803 (providing that the ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence). For example, Dr. Taylor, a treating source, limited Gatewood to lifting 5-10 pounds, indicated she avoid sustained neck flexion, and limited her to working no more than 2-hour shifts for an undisclosed period of time. Dr. Harmon, also a treating doctor, limited Gatewood to occasional reaching above shoulder level and at desk level. Dr. Harmon also limited Gatewood's eye/hand movements with little neck flexion to 3-4 hours per day during an eight-hour workday. Dr. Neiman, an examining doctor, agreed with Dr. Taylor's assessment from six months earlier that Gatewood should be limited to lifting no more than 10 pounds, and avoid neck flexion. Finally, Robinson, a non-acceptable medical source, but a treating source, limited Gatewood's ability to stand, sit, and walk to intermittently during an eight-hour workday, occasional lifting of 20 pounds or less, and working a minimum amount of hours during a workday/workweek.

In determining Gatewood's RFC, the ALJ failed to either weigh or fully address any of these opinions. If it had been only one opinion that the ALJ failed to fully address and/or weigh, perhaps a harmless error argument would appropriate. However, the Court

---

[5] *See* Administrative Record at 27.

believes given the circumstances, the ALJ's failure to fully address and/or weigh the opinions of three treating sources and one examining source requires remand for failure to fully and fairly develop the record. *See Cox*, 495 F.3d at 618 (providing an ALJ has a duty to develop the record fully and fairly); *see also* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (requiring an ALJ to give "good reasons" for assigning weight to a particular medical opinion).

Moreover, while Gatewood did not address it in her brief, the Court's review of the ALJ's decision shows that the ALJ failed to properly evaluate her subjective allegations of disability; in fact, the ALJ *did not* evaluate Gatewood's testimony. When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ did not give "full consideration" to the evidence presented relating to Gatewood's subjective complaints, or address *any* Polaski factor in his decision. Moreover, if an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the *Polaski* factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Here, the ALJ made no credibility determination, let alone detail the reasons for discounting Gatewood's testimony.

In summary, the Court finds that the ALJ failed to base his RFC assessment and ultimate disability determination on the relevant evidence in the record, including all relevant medical records, observations of treating sources and other sources, and Gatewood's own description of her limitations. *See Guilliams*, 393 F.3d at 803. The ALJ failed to properly evaluate and weigh the opinions of Drs. Taylor, Harmon, and Neiman. The ALJ also failed to fully address the opinions of Gatewood's treating non-acceptable medical source, Stephanie Robinson, ARNP. Lastly, the ALJ failed to make a credibility determination regarding Gatewood's subjective allegations of disability. Accordingly, remand is necessary. On remand, the ALJ must fully and fairly develop the record in this matter, and address and properly evaluate the medical evidence from Gatewood's treating and examining physicians, address and properly evaluate the opinions of the non-acceptable medical source, and make a proper credibility determination for Gatewood.

## 2. *Hypothetical Question*

Gatewood argues the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of her impairments. Gatewood also argues the ALJ's hypothetical did not contemplate all of her functional limitations. Gatewood maintains this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which

are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

In section *IV.B.1.c*, the Court determined that remand was necessary because the ALJ failed to fully and fairly develop the record with regard to the medical evidence in the record. Accordingly, remand is necessary to allow the ALJ to reconsider the hypothetical question posed to the vocational expert in order to make sure that it captures the concrete consequences of Gatewood's limitations based on the medical evidence as a whole. *See Hunt*, 250 F.3d at 625 (requiring the ALJ to "capture the concrete consequences of the claimant's deficiencies.").

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability."

*Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record, particularly with regard to the medical opinion evidence in the record; (2) make a proper credibility determination in this matter; and (3) provide the vocational expert with a hypothetical question that captures the concrete consequences of Gatewood's limitations based on the medical evidence as a whole. Accordingly, the Court finds that remand is appropriate.

## V. CONCLUSION

The Court concludes this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully and fairly develop the record with regard to the medical evidence in the record, including full consideration and proper evaluation of the opinions of Drs. Taylor, Harmon, Neiman, and Robinson. The ALJ shall also consider all of the evidence relating to Gatewood's subjective allegations of disability, and address his reasons for crediting or discrediting those allegations when determining Gatewood's credibility and RFC. Finally, the ALJ should also provide the vocational expert with a hypothetical question that captures the concrete consequences of Gatewood's limitations based on the medical evidence as a whole.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 28th day of ____July____, 2016.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA